Diane PECOR, Plaintiff,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY, Fort Howard Corporation, and Fort Howard Group Life Insurance Plan, Defendants.

No. 94–C–343.

United States District Court,
E.D. Wisconsin.

Dec. 8, 1994.

Richard J. Krueger, Krueger & Delforge, Oconto, WI, for plaintiff.

Richard P. Carr, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, WI, Deborah Klein, Popham, Haik, Schhnobrich & Kaufman, Ltd., Minneapolis, MN, for Northwestern Nat. Life Ins. Co.

Ralph J. Tease, Jr., Donald L. Romundson, Liebmann, Conway, Olejniczak & Jerry, S.C., Green Bay, WI, for Fort Howard Corp. and Fort Howard Corp. Group Life Ins. Plan.

## DECISION AND ORDER

RANDA, District Judge.

This case comes before the Court upon motions to dismiss by the defendants, Fort Howard Corporation ("Fort Howard") and Northwestern National Insurance Company ("NNIC"), and upon a subsequent motion for summary judgment by NNIC. The Court grants Fort Howard's motion to dismiss, denies NNIC's initial motion to dismiss, and grants NNIC's subsequent summary judgment motion, thereby dismissing the case in its entirety.

## FACTS

The following material facts are undisputed. Randal Pecor ("Mr. Pecor") started working for Fort Howard in September of 1990. At all relevant times hereto, Fort Howard provided eligible employees a "Basic Life Insurance" benefit, which Fort Howard paid for. Optional "Supplemental Life Insurance" was also provided by Fort Howard, which employees paid for themselves through payroll deductions. The life insurance plan, formally referred to as Fort Howard Group Life Insurance Plan ("the Plan"), was not self-insured. Rather, at the time Pecor began working for Fort Howard, the insurance was provided by the Equitable Life Assurance Society of the United States ("Equitable"). NNIC subsequently provided the insurance on the same terms and conditions as those contained in the Equitable policies. Although NNIC provided the insurance, the Summary Plan Description ("SPD") listed Fort Howard as the Plan Administrator with authority to control and manage the operation and administration of the Plan. Fort Howard was also listed as the Plan's agent for service of process.

All of the Basic Life and Supplemental Life insurance policies at issue, as well as the corresponding policy certificates and SPD's, contained the following suicide exclusion:

> [The Insurer] will not pay the death benefit during the first two years of an employee's Life Insurance coverage if death is due to: ... suicide (while sane or insane)

(Yell Aff., Ex. A at 6, Ex. B at 9, Ex. D at 906; Krueger Brief and Affidavit at ¶ 18.)

Mr. Pecor committed suicide on September 12, 1992. His wife, Diane Pecor ("Pecor"), filed a claim for both basic and supplemental life insurance benefits under the terms of the Plan. The Plan, through NNIC, denied benefits on grounds that Pecor had committed suicide during the first two years of his coverage. Pecor filed suit in state court, alleging state common law claims for breach of contract. NNIC and Fort Howard removed the action to federal court on grounds that the Plan is an employee welfare benefit plan governed by ERISA, creating federal jurisdiction and preempting all state law claims. Fort Howard then moved to dismiss on grounds that the employer is not a proper party to an ERISA action and both defen-

dants moved to dismiss on grounds that the complaint failed to couch its relief in the language of ERISA. Pecor's response to these motions included an amended complaint adding the Plan as a defendant and stating a claim for benefits under 29 U.S.C. § 1132(a)(3).[1] The Court informed the parties in a subsequent telephone conference that it intended to grant Fort Howard's motion and deny NNIC's and that a written decision would follow. In the interim, NNIC filed a summary judgment motion, which is now fully briefed.

## LAW

### I. MOTIONS TO DISMISS

■ This Court and others have clearly stated "that the employer is not a 'party' to a plan for purposes of suit, and that only the plan as an entity may be sued for benefits due under a plan." *Chilcote v. Blue Cross & Blue Shield,* 841 F.Supp. 877, 880 (E.D.Wis. 1993); *see also, Miller v. Pension Plan for Emp. of Coastal Corp.,* 780 F.Supp. 768, 773 (D.Kan.1991); *Holland v. Bank of America,* 673 F.Supp. 1511, 1518 (S.D.Cal.1987). Pecor argues that since Fort Howard is the plan administrator, as well as a plan sponsor and fiduciary, and since it expressly retained control and authority over the administration of the Plan, it is subject to a suit and judgment for benefits due. She quotes the Court's *Chilcote* opinion which, subsequent to the above quote, stated that "[plaintiff] has sued the Plan through Blue Cross, the Plan's administrator, and therefore the Plan is a proper party to this suit." *Chilcote,* 841 F.Supp. at 880. The latter quotation simply states that jurisdiction can be obtained over a plan by suing the plan administrator. It does not imply that the plan administrator is thereby a proper party to a suit for benefits. Suing and serving Fort Howard, in its capac-

ity as plan administrator, was sufficient to obtain jurisdiction over the Plan, but does not provide a basis for suing Fort Howard in its capacity as employer. The distinction determines which entity's assets could be subject to a judgment. A suit for benefits is a suit against the plan, and in this case, a suit against the insurance company with whom the plan contracted to provide the benefits at issue. Any judgment obtained is a joint and several judgment against the assets of the Plan and NNIC. It is not and should not be a judgment against the general assets of the employer. Fort Howard is dismissed.[2]

NNIC's motion to dismiss became moot when Pecor amended her complaint to couch her relief in terms of ERISA. The same is therefore denied. The parties appear to have proceeded, however, on the basis that Fort Howard's dismissal leaves NNIC as the only remaining defendant. This is not what the Court intended when it informed the parties of Fort Howard's dismissal. Rather, consistent with *Chilcote,* suing and serving Fort Howard was effective to obtain jurisdiction over the Plan, for which Fort Howard is the administrator and agent for service of process. Pecor's amended complaint reflects the addition of the Plan as a defendant. The Court did not dismiss the Plan. As stated above, a suit for benefits is a suit against the Plan. If a judgment was obtained, and NNIC went bankrupt before it was paid, Pecor could attach the assets of the Plan. Therefore, both the Plan and NNIC are proper party defendants.

### II. SUMMARY JUDGMENT

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

1. Pecor cites the inappropriate statutory provision. 29 U.S.C. § 1132(a)(3) allows a beneficiary to sue for injunctive or other equitable relief. 29 U.S.C. § 1132(a)(1)(B) allows a beneficiary to sue for benefits due under the terms of a plan.

2. Pecor argues that jurisdiction must be retained over Fort Howard to prevent it from using its position of plan administrator to override any judgment obtained herein by directing NNIC not

to pay. This concern is meritless. The Plan itself would be subject to any judgment obtained herein. When Fort Howard acts in its capacity as plan administrator, it steps into the shoes of the Plan and is subject to any court orders restraining or directing the Plan's actions. It could not override the Court's judgment and attempting to do so, as Pecor suggests, would be contempt of court.

any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Summary judgment is no longer a disfavored remedy. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.,* at 327, 106 S.Ct. at 2555. It "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.,* 794 F.Supp. 328, 330 (E.D.Mo.1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While a *material* fact is one that is "outcome determinative under the governing law", *Whetstine v. Gates Rubber Co.,* 895 F.2d 388, 392 (7th Cir.1990), a *genuine* issue as to that material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The question whether a material issue of fact is *genuine* necessarily requires "some quantitative determination of sufficiency of the evidence." Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183, 186 (1987). "Of course, a court still cannot resolve factual disputes that could go to a jury at trial, ... [b]ut no longer need the trial court leave every sufficiency issue for trial or a later directed verdict motion." *Id.* Rather, the standard for summary judgment is now the same as that for a directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Thus, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. Such principles insure that summary judgment is utilized "when it can be shown that a trial would serve no useful purpose." *Windham v. Wyeth Laboratories, Inc.,* 786 F.Supp. 607, 610 (S.D.Miss.1992).

Pecor claims there are many facts in dispute. For instance, NNIC argues that it had full discretionary authority to interpret the policies at issue and determine the underlying facts. Such would limit this Court's review to determining whether or not NNIC's denial of benefits was "arbitrary and capricious". NNIC also argues that Mr. Pecor was initially hired only as a "limited term employee" with no eligibility for ERISA-type benefits, including the benefits at issue, and that Mr. Pecor signed waivers confirming this arrangement and acknowledging the lack of benefits. NNIC states that Mr. Pecor did not become a "continuous, regular full-time" employee until August 19, 1991. As a result, Mr. Pecor did not become eligible for basic life insurance coverage until the latter date and did not become eligible for supplemental life insurance until a date thereafter. Pecor disputes these facts. Pecor argues that nothing in the Plan documents confers the discretionary authority alleged by NNIC and that the Court is therefore required to conduct a de novo review. Pecor also argues that regardless of what Fort Howard's internal documents may state, her husband was a full-time employee from the day he was hired

and that his eligibility for life insurance was triggered simply by his full-time status. Nothing more was required. Pecor further argues that any waivers signed by her husband are unenforceable because he was not aware of the rights he was waiving. All of these disputes, however, are immaterial, because as is explained below, even if the Court conducted a de novo review, and even if it accepted Pecor's version of the foregoing facts, the denial of benefits must be upheld.

■ The latter conclusion stems from the Court's resolution of two other issues. The first issue concerns Mr. Pecor's "first day of employment" which, according to Pecor's version of things, is the date upon which her husband became eligible for basic life insurance. NNIC argues that the date was September 25, 1990, which is without dispute the first day Mr. Pecor actually worked. Pecor argues that it was September 13, 1990, which is the day her husband apparently took a drug test in order to qualify for employment. While this dispute is material, it is not genuine. Nothing in the document relied upon by Pecor in this regard suggests that September 13, 1990 was his "first day of employment", or that it was anything other than a testing date. (Krueger Aff. at Ex. 11.) Quite the contrary, if Mr. Pecor had failed the test, he presumably would not have been hired. Moreover, the document itself lists September 25, 1990 as Mr. Pecor's starting date. (Id.) It further instructs staff to tell new employees to "bring their birth certificate, SS card and driver license" to the personnel department "on their first day of work". (Id.) Such documents were probably necessary to initiate the employment relationship and the provision of all available benefits. Moreover, the SPD itself implies that the first day of employment, for purposes of one's eligibility for life insurance benefits, is the first day one actually works:

> If you are absent from work on your first day of employment, the Basic Life Insurance and AD & D Insurance *will be delayed until the day you return to active full time work.* Eligibility for Supplemental Life Insurance and Family Life Insurance starts the first of the month following commencement of your coverage under Basic Life Insurance and AD & D Insurance.

(Yell Aff., Ex. D at 903; emphasis supplied.) Based on this record, no reasonable jury could conclude that Mr. Pecor's first day of employment for purposes of his life insurance eligibility was September 13, 1990. The only reasonable interpretation of the facts and the SPD is that September 25, 1990 was Mr. Pecor's first day of employment because that was his first day of actual work. Therefore, the earliest possible date upon which the two-year suicide exclusion began to run was September 25, 1990.

■ The Court then must determine the meaning of the term "year" in the suicide exclusion. How the Court approaches the issue depends upon whether the term is found to be ambiguous or not. Whether a term in a plan is ambiguous is a question of law. *Taylor v. Continental Group*, 933 F.2d 1227, 1232 (3rd Cir.1991); *Cury v. Colonial Life Ins. Co. of America*, 737 F.Supp. 847, 853 (E.D.Pa.1990). If it is unambiguous, the Court interprets its meaning as a question of law. *Id.* If it is ambiguous, the question is one of fact. *Id.* Plan language is ambiguous "if it is subject to more than one reasonable interpretation." *McNeilly v. Bankers United Life Assurance Co.*, 999 F.2d 1199, 1201 (7th Cir.1993); *see also, Taylor*, 933 F.2d at 1232; *Cury*, 737 F.Supp. at 853. Ambiguous terms are construed "strictly in favor of the insured." *McNeilly*, 999 F.2d at 1201. In this connection, NNIC argues that the term "year" is unambiguous. NNIC argues that the plain and ordinary meaning of the term is a 365–day period (or, in the case of a leap year, a 366–day period) beginning from, in this case, the date an employee's coverage starts. Pecor argues, on the other hand, that the term is ambiguous and could mean almost anything. Possible interpretations, according to Pecor, include any year in which an employee works any portion of that year, or 52 forty-hour weeks (giving credit for overtime), or 261 days worked (giving credit for weekends worked), etc. All of these interpretations, of course, could significantly shorten the duration of the suicide exclusion as compared to the common understanding of the term "year" as 365 days. Pecor offers no

explanation or other evidence supporting the reasonableness of these interpretations. Under Pecor's view, the number of reasonable interpretations seems limited only by her counsel's imagination. This is not the law:

> Of course, "we will not artificially create ambiguity where none exists," ... or disregard exclusions "upon every remotely colorable claim of plan ambiguity." Instead, "the rule that ambiguities must be resolved against insurers can only be invoked when there exists .a genuine (meaning substantial) uncertainty, not resolvable by other means, and the insured's proposed reading must be reasonable.... Rules of interpretation are tie-breakers, even when the words being interpreted appear in insurance policies."

*McNeilly*, 999 F.2d at 1201. (Citations omitted.) There is no "tie" here. Pecor has not proposed a reasonable interpretation of the term "year". There is no genuine or substantial uncertainty concerning the meaning of the term "year" in the context of the suicide exclusion. The term is unambiguous. The plain and ordinary meaning of the term "year" is 365 (or 366) days. The suicide exclusion reads, "[d]uring the first two years of an employee's ... coverage", which does not reasonably lead to the awkward interpretations suggested by Pecor's counsel. Indeed, the fact that the Plan talks of the first two years of "coverage", rather than the first two years of "employment" or "work", reinforces the plain meaning of the term. "Coverage" is a universal term of art in all types of insurance. "[T]wo years of coverage" in a job-related life insurance policy is not measured by the actual weeks, hours or days worked any more than the same phrase in a car insurance policy would be measured by the actual weeks, days or hours that a car is driven. Unlike one's work schedule, "coverage" continues 24–hours a day, 7–days a week, 52–weeks a year, *i.e.*, 365–366 days. "Two years of coverage" is therefore 730–731 days.

Given the Court's interpretation of the term "year", and given the Court's finding

that Mr. Pecor's first day of employment was September 25, 1990, Mr. Pecor clearly committed suicide during the first two years of his life insurance coverage. Thus, even if the Court construed the issues discussed earlier in Pecor's favor, she cannot recover. The case is dismissed.[3]

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Fort Howard's motion to dismiss is granted;

2. NNIC's motion to dismiss is denied as moot;

3. Defendants' motions for sanctions are denied; and

4. NNIC's motion for summary judgment is granted and the case is dismissed, on its merits, and with prejudice.

---

**3.** Even though the Plan has not filed a motion, the case is dismissed as against both NNIC and the Plan, because no liability can lie against either defendant once the Court finds that no benefits were due under the terms of the Plan.