60 F.3d 1282
 Pens. Plan Guide P 23,915
Holly CANNON, Plaintiff-Appellant,
v.
WITTEK COMPANIES, INTERNATIONAL, Carmen Viana, Individually
and in her capacity as CEO, President and Administrator of
the benefit plans of Wittek Companies International and
Health Care Service Corporation, a Mutual Legal Reserve
Company, the Blue Cross Blue Shield Plan serving the State
of Illinois, Defendants-Appellees.
 No. 94-3123.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 12, 1995.
Decided Aug. 2, 1995.
 
 John W. Robertson, Carl E. Hawkinson, Barash & Stoerzbach, Galesburg, IL, for Holly Cannon.
 W. Thomas Johnston, Quinn, Johnston, Henderson & Pretorius, Peoria, IL (argued) for Wittek Companies, Intern. and Carmen Viana.
 Thomas P. Higgins (argued), Katherine S. Gorman, Prusak & Winne, Peoria, IL, for Health Care Service Corp.
 Before POSNER, Chief Judge, ROVNER, Circuit Judge, and MORAN, District Judge.*
 ILANA DIAMOND ROVNER, Circuit Judge.
 
 
 1
 This case presents the question of whether Holly Cannon was wrongly denied insurance benefits in violation of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B). On cross motions for summary judgment, the district court found that Cannon was not eligible for benefits under the terms of the insurance plan at issue, and therefore granted summary judgment in favor of the defendants.
 
 I. BACKGROUND
 
 2
 The parties do not dispute the facts. Cannon was hired as a full-time secretary "floater" by Wittek Companies International ("Wittek") on April 29, 1991. Wittek provided health insurance to its employees through Health Care Service Corporation, the Blue Cross Blue Shield Plan ("Blue Cross"). Under the plan, Wittek's new employees were automatically enrolled in the insurance plan on the ninety-first day of their employment. On June 24, 1991, however, only fifty-seven days into her employment, Cannon was "separated" from her employment in connection with a reduction in the work force at Wittek. On Cannon's "Personnel Transaction Sheet," Wittek recorded the type of separation as "lay-off."[1] An additional notation in the remarks section read "Indefinite layoff--job elimination."
 
 
 3
 Later that year, Wittek called Cannon back to work and she began working again on October 14, 1991. At that time, she was not required to fill out a new job application, new IRS tax withholding forms or new State of Illinois tax withholding forms. Nor did Wittek submit for Cannon a new application for insurance. All of these tasks had been accomplished when she was first hired in April 1991. Wittek did fill out a Personnel Transaction Sheet for Cannon to note an "event" in her employment.[2] On that form, Wittek checked the box for "reinstate" but also filled in the "previous separation date" on the "rehire" line.
 
 
 4
 Fifty-five days after her reinstatement, Cannon suffered a heart attack and, as a result, incurred significant medical expenses. At that time, Cannon had worked for Wittek as a full-time employee for one hundred and twelve non-consecutive days. While hospitalized, Cannon learned that Blue Cross was denying coverage of her medical treatment. Blue Cross was apparently under the impression that Wittek had been terminated, rather than laid off, on June 24, 1991, and that her ninety day waiting period began anew when she was reinstated on October 14, 1991. Therefore, Blue Cross did not consider Cannon eligible for benefits on December 7, 1991 when she had her heart attack because she had not yet been employed for ninety days. When Cannon returned to work after the hospitalization, a Wittek benefits advisor directed her to fill out a new insurance application and back-date it to December 2, 1991, before her heart attack occurred, ostensibly to inform Blue Cross that Cannon had been recalled to work and should be eligible for benefits.
 
 
 5
 Under the terms of the plan, Cannon appealed the denial of benefits to Blue Cross by sending a letter and documentation supporting her claim that she had been laid off, rather than terminated, and that she should therefore be covered. Blue Cross did not read Cannon's appeal documents but instead relied entirely on Wittek's version of events in affirming its denial of coverage.
 
 
 6
 The district court framed the issue in terms of whether Cannon could "tack" together the two periods of employment prior to her heart attack in order to satisfy the ninety day waiting period. In the absence of an explicit provision allowing tacking, the district court ruled that the ninety days must be consecutive, that Cannon did not therefore meet the ninety day requirement and was not covered by the plan. In reaching that conclusion, the district court emphasized that Cannon herself believed that she had two hire dates (instead of a hire date and a recall date) and that it was necessary for her to fill out the back-dated insurance form before she would be covered. The district court found further support for its ruling in the fact that Wittek had not withheld from Cannon's paycheck the first premium due under the plan.[3] Finally, the district court reasoned that Blue Cross' interpretation of the plan regarding Cannon's eligibility was not "arbitrary or capricious." Because the court found that Blue Cross was not liable under the plan, the court did not reach the issue of whether Blue Cross breached its fiduciary duty by failing to review the documents Cannon submitted with her appeal.[4]
 
 II. DISCUSSION
 
 7
 In section 1132(a)(1)(B) actions challenging denials of benefits, courts review the decisions of plan administrators de novo, except when the plan gives the administrator discretion to interpret plan terms or otherwise determine benefits eligibility. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989); McNeilly v. Bankers United Life Assur. Co., 999 F.2d 1199, 1201 (7th Cir.1993). Because the plan here does not provide Blue Cross with such discretion, the district court erred when it applied an arbitrary and capricious standard below. McNeilly, 999 F.2d at 1201. We now review de novo the district court's grant of summary judgment for the defendants and denial of summary judgment for Cannon. Id.
 
 
 8
 In construing insurance plans governed by ERISA, we are guided by the federal common law rules of contract interpretation. Id. Under those rules, we interpret the terms of a policy in an ordinary and popular sense, as would a person of average intelligence and experience. Id. When plan terms are ambiguous, we construe them strictly in favor of the insured; contract language is considered ambiguous if it is subject to more than one reasonable interpretation. Id.
 
 
 9
 Nothing in the plan itself addresses the issue of whether the waiting period must be met with consecutive days of employment. The plan simply requires ninety days of full time employment before an employee is automatically enrolled. See Plaintiff-Appellant's Appendix at 79, 90. In the absence of an explicit provision that the days be consecutive, the plan is at best ambiguous on this alleged requirement. We are obliged to construe all plan ambiguities in favor of the insured and therefore, we hold that the ninety days need not be consecutive. Kerr Steamship Co. v. Chicago Title & Trust Co., 120 Ill.App.3d 998, 76 Ill.Dec. 355, 361, 458 N.E.2d 1009, 1015 (1 Dist.1983) (declining to add the word "cumulative" to rent increase provision in lease in absence of express provision).
 
 
 10
 Significantly, all of the parties agree that if Cannon was laid off instead of terminated, she would have satisfied the ninety day waiting period. Both Wittek and Blue Cross conceded this point at oral argument.[5] The only dispute remaining, then, is whether Cannon was laid off or terminated on June 24, 1991. The Blue Cross plan itself defines the point at which an employee is to be considered terminated. A plan document entitled "Supplement to the Benefit Application" poses the following question and provides the following answer:
 
 
 11
 When does the employer consider an employee's employment terminated?
 
 
 12
 Employee terminated when Personnel Office enters Personnel Transaction sheet showing termination.
 
 
 13
 Plaintiff-Appellant's Appendix at 78. Therefore, under the plan, the Personnel Transaction sheet is controlling on the issue of termination. Cannon's Personnel Transaction sheet indicates that the type of separation was a "lay-off," rather than a "discharge."
 
 
 14
 Wittek nonetheless contends that even though the Personnel Transaction sheet indicates a lay-off, Wittek actually meant to terminate Cannon. Wittek argues that there is further support for the termination in the "rehire" of Cannon later that year. Cannon argues that Wittek should not be allowed to go behind its Personnel Transaction sheet and try to prove with parol evidence what it really meant when it marked "lay-off." We agree with Cannon.
 
 
 15
 The contract is explicit about the event of termination. Under the contract, the Personnel Transaction sheet controls the type of separation. In the absence of ambiguity, Wittek may not use parol evidence to explain what the terms of the agreement mean. Bristow v. Drake Street, Inc., 41 F.3d 345, 351 (7th Cir.1994). Bristow involved an employment contract between a playwright-employer and a producer-employee which explicitly provided that the producer could be terminated only for a criminal act. The playwright-employer argued that the contract really meant that the producer could be terminated for a criminal act or if the play closed. We declined to read such a term into the unambiguous contract, reasoning that if an unambiguous contract "can be upended by the self-serving oral testimony of one party to it that his duty to perform was actually dependant on a condition nowhere expressed in the contract and flatly contradicted by what is expressed in the contract, ... then the parol evidence rule is dead." Id. (emphasis in original) (citations omitted).
 
 
 16
 Similarly, here, if Wittek is permitted to go behind the plain language of the contract with self-serving testimony about what it really meant when it checked off "lay-off" on the Personnel Transaction sheet, then the parol evidence rule would have no force. We must instead hold Wittek to the plain terms of its contract, meaning that the Personnel Transaction sheet controls whether the separation was a layoff or a termination. Because the parties do not dispute that the Personnel Transaction sheet specified that Cannon was laid off, we hold that Cannon was clearly eligible for insurance at the time she had her heart attack. Thus, Blue Cross wrongly denied Cannon's claim. Therefore, we reverse the judgment of the district court and remand with directions to enter judgement for Cannon, after determining the amount owed to Cannon by defendants.
 
 
 17
 Because we are holding Blue Cross liable for Cannon's insurance coverage, there is one further issue to address. Cannon claimed below that Blue Cross breached its fiduciary duty by failing to review the documents she submitted with her appeal from the initial denial of coverage. Cannon seeks attorney's fees under 29 U.S.C. Sec. 1132(g)(1), and correctly states in her motion for summary judgment that bad faith is one of the factors the court should consider in deciding whether to grant a plaintiff attorney's fees. Cannon argues that a breach of fiduciary duties would indicate bad faith and entitle her to attorney's fees.
 
 
 18
 Blue Cross admits it owes a fiduciary obligation to Cannon under the plan, but argues that it was entitled to rely on information supplied by the employer, in this case Wittek, in assessing Cannon's eligibility. Blue Cross ignores, however, the obligation created by the contract itself to review denials of claims when requested to do so by the insured. The plan provides that the insured may request a review of a denial of coverage in writing and may submit claim information and comments as part of this appeal. See Plaintiff-Appellant's Appendix at 88. The parties do not dispute that Cannon appealed the denial of coverage according to the terms of the plan. As part of her appeal, Cannon submitted the controlling document, the Personnel Transaction sheet which demonstrated she was laid off, rather than terminated by Wittek. Blue Cross admits that it failed to read the materials submitted by Cannon as part of her appeal and instead relied entirely on Wittek for information about Cannon's employment status. But Blue Cross, an admitted fiduciary of Cannon, was contractually obliged to review her claim. Presumably, this contractual obligation extended to reviewing relevant documents submitted by Cannon as part of her appeal. Thus, we think that Cannon can make a strong case on remand for Blue Cross' breach of fiduciary duty.
 
 
 19
 Under 29 U.S.C. Sec. 1132(g)(1), the grant of attorney's fees is discretionary. Because the district court found that Cannon was not eligible for benefits under the plan, it did not address the issue of attorneys fees, and thus did not address Cannon's claim for breach of fiduciary duty. On remand, the district court should consider Cannon's request for fees in light of our holding here and in light of the factors set out in Bittner v. Sadoff & Rudoy Industries, 728 F.2d 820, 828 (7th Cir.1984).
 
 III. CONCLUSION
 
 20
 For the foregoing reasons, we reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable James B. Moran of the United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [1]
 The other categories for separation type on the form are (1) "resigned with notice" with a space to check "yes" or "no;" (2) "discharge;" and (3) other
 
 
 [2]
 The form contains six types of employment events: (1) "new hire;" (2) "rehire" (with a space for previous separation date); (3) "reinstate;" (4) "replacement for" (with a space for a name); (5) "temporary until approx. date" (with a space for a date); and (6) "recall from lay-off."
 
 
 [3]
 The defendants conceded at oral argument that the payment of any premiums was not a prerequisite for coverage under the automatic enrollment term of the plan. Therefore, we will not address this rationale, except to note that, in view of the defendants' concession, the district court was incorrect in using the non-payment of the premium as a factor in determining Cannon's coverage
 
 
 [4]
 Cannon did not include a separate claim for breach of fiduciary duty in her complaint. Rather, in seeking attorney's fees under 29 U.S.C. Sec. 1132(g)(1), Cannon sought to show that Blue Cross exhibited bad faith in its denial of coverage, which is one of the factors a court should consider in exercising its discretion to grant fees. See Bittner v. Sadoff & Rudoy Indust., 728 F.2d 820, 828 (7th Cir.1984). After ruling for Blue Cross on the issue of liability under the plan, the district court did not consider whether Blue Cross breached its fiduciary duty. We will address the issue of breach of fiduciary duty infra
 
 
 [5]
 The district court was apparently unaware that Blue Cross conceded that the type of separation controlled the result