Bernita HAMMOND, Plaintiff–Appellant,

v.

FIDELITY AND GUARANTY LIFE IN-
SURANCE COMPANY, a Maryland
Corporation, Defendant–Appellee.

No. 91–1711.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1992.

Decided June 11, 1992.

As Amended June 11, 1992.

John H. Bisbee, Macomb, Ill. (argued),
for plaintiff-appellant.

Stephen R. Swofford, Bruce L. Carmen
(argued), D. Kendall Griffith, Hinshaw &
Culbertson, Chicago, Ill., for defendant-ap-
pellee.

Before EASTERBROOK and KANNE,
Circuit Judges, and SHARP, District
Judge.*

KANNE, Circuit Judge.

For over fifteen years, Charles R. Ham-
mond, a store manager, sexually harassed
his female employees at the Ludlum Food
Mart of Bushnell, Illinois. Fed up with this
behavior, Ludlum's management finally
fired Hammond on November 1, 1985. He
died by his own hand less than a year later.
Then his wife Bernita Hammond brought
this ERISA (Employee Retirement Income
Security Act, 29 U.S.C. §§ 1001 *et seq.*)
action against Ludlum and the Fidelity and
Guaranty Life Insurance Co. (Fidelity),
claiming that she was still entitled to life
insurance benefits under Ludlum's group
policy/employee benefit plan. That policy
specifically extended coverage one year be-
yond the employment period if, prior to
death, the insured had been "totally dis-
abled," a term defined in the policy as the
inability "to perform the chief duties of his
job or any job which he may be fitted by
his (1) training; (2) education; or (3) experi-

* The Honorable Allen Sharp, Chief District Judge
for the Northern District of Indiana, sitting by

designation.

ence." Focusing on this provision, Mrs. Hammond maintained that her late husband's offensive conduct was the product of a narcissistic personality disorder which rendered him mentally and physically incapable of working at Ludlum or anywhere else—a condition she believed fell within the scope of "totally disabled."

The district court disagreed and granted summary judgment in favor of the defendants. En route to this conclusion, the court declined Mrs. Hammond's invitation to refer to state law as a potential source for developing federal common law on the definition of "total disability"; it reasoned that "[w]here an insurance contract specifically defines operative terms, the Court will not look elsewhere to give meaning to those terms." The district court also rejected Mrs. Hammond's contention that her husband's ability to "perform his chief duties" included his ability to behave under acceptable standards and to create a work environment conducive to productivity among employees. Such an interpretation, in the court's view, would have "unduly broaden[ed] the scope of disability beyond that which was intended [by the policy]." Mrs. Hammond now appeals from entry of this judgment.

Our standard of review for this sort of case is well-established. We review the district court's entry of summary judgment *de novo,* drawing all reasonable inferences in the non-moving party's favor. *Santella v. Chicago,* 936 F.2d 328, 331 (7th Cir.1991); *First Wisconsin Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990). An entry of summary judgment will be upheld only if we can determine from the record that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Schroud,* 916 F.2d at 398. Viewing Mrs. Hammond's claim in this light, we conclude that the district court properly granted summary judgment in favor of the defendants.

One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, *Pohl v. Na-tional Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992), and that is why ERISA requires that "every" plan be established and administered under "a written instrument." 29 U.S.C. § 1102(a)(1). *See also Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) (ERISA was enacted "to protect contractually defined benefits"). However, it is not always easy to determine what a benefit plan says even when the language of the plan has been reduced to writing. More often than not these instruments are long, complex and far from complete—and the federal judiciary is inevitably left with the burden of clearing up any unanticipated semantic disputes. Here, the dispute revolves around the scope of the phrase "total disability."

Our starting point for deciphering this term is the plan itself. Oftentimes the plan will have a provision empowering the trustee to construe and interpret disputed terms. When that's the case, our task is easier—we simply defer to the trustee's interpretation, assuming it's reasonable. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) ("A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable."); *Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990) ("Since in this case the trustees did have discretion to interpret the plan, we can overturn their determination only by finding that they abused their discretion—which is to say, that they were not just clearly incorrect but downright unreasonable."); *Sisters of the Third Order of Saint Francis v. Swedish American Group Health Benefit Trust,* 901 F.2d 1369, 1371 (7th Cir.1990) ("A plan containing no provisions about construction accordingly leads to *de novo* review, while a plan expressly granting the trustee leeway yields deferential review.").

Unfortunately, the plan at issue today did not delegate any interpretative authority to the trustees, and that leaves us with the sticky problem of deciding wheth-

er a uniform federal rule of contract interpretation applies when we construe the meaning of "total disability," or whether an applicable state rule of construction—Illinois in this case—is incorporated into federal law for that purpose. This boils down to a question of preemption. ERISA explicitly states that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, Congress also enacted an "insurance savings clause" in § 1144(b)(2) which provides that a state law is not preempted if it regulates insurance; that is, if it " 'has the effect of transferring or spreading a policyholder's risk, ... is an integral part of the policy relationship between the insurer and the insured, and ... the practice is limited to entities within the insurance industry.' " *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48–49, 107 S.Ct. 1549, 1553–54, 95 L.Ed.2d 39 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)).

Are state laws governing insurance policy interpretation preserved under ERISA? Like the other circuits which have already addressed this issue, we think not. *See Sampson v. Mutual Benefit Life Ins. Co.*, 863 F.2d 108, 110 (1st Cir.1988); *McMahan v. New England Mutual Life Ins. Co.*, 888 F.2d 426, 429–30 (6th Cir.1989); *Brewer v. Lincoln National Life Ins. Co.*, 921 F.2d 150, 153 (8th Cir.1990); *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1440–41 (9th Cir.1990). We cannot imagine any rational basis for the proposition that state rules of contract interpretation "regulate insurance" within the meaning of § 1144(b)(2). Of course, these decisional laws affect the way plan benefits may ultimately be distributed, but that's a far cry from stating that they have "the effect of transferring or spreading a policyholder's risk." In our view, they simply force the insurer to bear the *legal* risks associated with unclear policy language. *See Brewer*, 921 F.2d at 153; *McMahan*, 888 F.2d at 429.

Even more importantly, a contrary answer would fly in the face of Congressional intent. ERISA's legislative history, discussed in a plethora of ERISA preemption cases, undeniably demonstrates that Congress expects uniformity of decisions under ERISA. *See Pilot Life*, 481 U.S. at 56, 107 S.Ct. at 1557 (1987) ("The uniformity of decision which the Act is designed to foster will help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws."); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987) (ERISA's preemption provision was designed to eliminate the "threat of conflicting or inconsistent State and local regulation of employee benefit plans."). That expectation would almost certainly be defeated were we to preserve 50 different state laws of insurance policy interpretation under the guise of federal common law. We therefore conclude that ERISA preempts state decisional rules, and that any ambiguities in ERISA plans and insurance policies should be resolved by referring to the federal common law rules of contract interpretation.

■ It remains only for us to determine whether, as a matter of law, Mr. Hammond's offensive behavior rendered him "totally disabled" within the meaning of Fidelity's plan. In undertaking this task, we interpret the terms of the policy "in an ordinary and popular sense as would a [person] of average intelligence and experience." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990) (quoting *Allstate Insurance Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir.1985)). Ambiguous terms in an insurance contract will be strictly construed in favor of the insured. *Northbrook Excess & Surplus Ins. Co. v. Proter & Gamble*, 924 F.2d 633, 638 (7th Cir.1991). However, we will "not artificially create ambiguity where none exists." *Evans*, 916 F.2d at 1441.

Disability provisions generally fall within one of two classifications, and the difference between them is substantial. An "occupational" disability policy provides benefits if the claimant is unable to perform his regular job; a "general" disability provision provides benefits if the claimant is unable to perform *any* job for which he is

qualified by reason of education, training or experience. *Vanderklok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610, 614 (6th Cir.1992); *Dewitt v. State Farm Ins. Companies Retirement Plan*, 905 F.2d 798, 802 (4th Cir.1990). Although broad in scope, "general" disability provisions should not be construed so literally that an individual must be utterly helpless to be considered disabled. Rather, the insured should be entitled to recover provided he or she is unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation. *Torix v. Ball Corp.*, 862 F.2d 1428, 1431 (10th Cir.1988); *Helms v. Monsanto Co., Inc.*, 728 F.2d 1416, 1420 (11th Cir.1984).

The clause at issue in the present case unequivocally qualifies as a general disability provision. It states that a claimant is totally disabled where he is unable to carry out the chief duties of his job, or any job for which he may have been fitted by his training, education or experience. Hence, the entry of summary judgment against the Hammond estate would only be appropriate if—and only if—the record indisputably demonstrates that Mr. Hammond's personality disorder did not prevent him from performing his prior occupation or any other meaningful work. We believe it does.

To begin with, Mr. Hammond's ability to complete his everyday responsibilities as a grocery store manager has never been questioned by *either* party. Despite his sexually aberrational conduct, he could still carry out those managerial duties which did involve direct supervision of female employees. But even if we assume that his inability to conform to behavioral norms rendered him completely incapable of supervising his staff, we are not convinced that he was disqualified from all other forms of gainful employment. Mr. Hammond's condition would not prevent him from performing significant, *nonsupervisory* work in the retail grocery business— or any other retail business for that matter—just as physically disabling diseases do not necessarily preclude individuals from performing meaningful, sedentary

work. *See, e.g., Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991) (employee suffering from spinal injury was not totally disabled where he was able to perform semi-sedentary work different from his regular occupation). We therefore hold that no person could reasonably conclude that Mr. Hammond's sexually aberrational behavior was totally disabling within the meaning of the Fidelity plan.

Accordingly, the district court's entry of summary judgment in favor of the defendants is AFFIRMED.