Todd N. SHANKS, Plaintiff–Appellant,

v.

**BLUE CROSS & BLUE SHIELD
UNITED OF WISCONSIN,**
Defendant–Appellee.

No. 91–3931.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 8, 1992.

Decided Nov. 16, 1992.

J. Michael End (argued), Gray & End,
Milwaukee, Wis., for plaintiff-appellant.

Elizabeth Bartlett (argued), Laurel
Barnes, Blue Cross & Blue Shield of Wis-
consin, Milwaukee, Wis., for defendant-ap-
pellee.

Before COFFEY, EASTERBROOK and
RIPPLE, Circuit Judges.

PER CURIAM.

On July 28, 1989 Todd Shanks was hospi-
talized after experiencing severe back pain.
On September 20, 1989 he underwent a
spinal fusion. Mr. Shanks participates in a
group health benefit plan—administered by
Blue Cross and Blue Shield United of Wis-
consin—which he hoped would pay for the
cost of the back surgery. He sued to re-
cover payment of health benefits from Blue
Cross pursuant to the Employee Retire-
ment Income Security Act of 1974 (ERISA),
29 U.S.C. § 1132(a)(1)(B). Mr. Shanks,
however, had seen a back specialist, Dr.
Flatley, on June 8, 1988, less than a year
before June 1, 1989, the effective date of
the plan. The court held that under the
health benefit plan this visit to Dr. Flat-
ley's office disqualified Mr. Shanks from
receiving payments from Blue Cross for his
surgery. Accordingly, the court directed

the verdict for Blue Cross after a bench trial.

Whether Mr. Shanks is entitled to health benefits under the plan turns on an interpretation of language in the plan's insurance contract. The contract calls for a waiting period that withholds benefits from those who received "MEDICAL CARE or treatment for any illness during the twelve (12) months immediately preceding the EFFECTIVE DATE [of the plan]." A person to whom this waiting period applied became eligible for benefits 90 days after the effective date if that person did not receive treatment for the condition during those 90 days. The person would have to wait 270 days from the effective date if he received treatment within the 90-day waiting period. The contract defines MEDICAL CARE as "professional services rendered by a PHYSICIAN or a PROFESSIONAL OTHER PROVIDER for the treatment of an ILLNESS or injury by other than surgical methods."

We must decide whether Mr. Shanks received "medical care or treatment" during his visit to Dr. Flatley. Mr. Shanks argues that the definition of "medical care or treatment" is ambiguous, that ambiguities are construed in favor of coverage, and that the result therefore should be a finding that he did not receive medical care or treatment when he consulted Dr. Flatley. Applying Wisconsin law the court found the term "treatment" to be broad but not ambiguous, and it defined the word to mean " 'to care for or deal with medically or surgically.' " *Shanks v. Blue Cross and Blue Shield*, 777 F.Supp. 1444, 1449 (E.D.Wis.1991) (citing Webster's Ninth New Collegiate Dictionary 1257 (1990)).

■ Although we think the court's conclusion sound, we must employ a different methodology because of this court's recent decision in *Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992). In *Hammond* we held "that ERISA preempts state decisional rules, and that any ambiguities in ERISA plans and insurance policies should be resolved by referring to the federal common law rules of contract interpretation." *Id.* Proceed-

ing from that holding, *Hammond* said that "[a]mbiguous terms in an insurance contract will be strictly construed in favor of the insured." *Id.* (citing *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble*, 924 F.2d 633, 638 (7th Cir.1991)). The law concerning ambiguities in contracts, however, does not come into play in this case because the term "treatment" as used here is not ambiguous. Treatment, as commonly understood, occurs when a health care provider takes steps to remedy or improve a malady that caused the patient to seek his help. *See id.* at 430 ("we interpret the terms of the policy 'in an ordinary and popular sense as would a [person] of average intelligence and experience.' ") (citations omitted).

■ Mr. Shanks argues that treatment requires intrusiveness in some form and that Dr. Flatley simply diagnosed him without any intrusiveness. We do not, however, need to limn the term "treatment" with bright lines that require intrusiveness or disqualify for simple diagnosis. There is no doubt in our mind that Dr. Flatley in this case clearly treated Mr. Shanks on June 8, 1988. Mr. Shanks visited an orthopedic surgeon complaining of lower back pain. He had a complete back examination, including X-rays, and was diagnosed by Dr. Flatley as having early degenerative disc disease. Dr. Flatley advised Mr. Shanks to avoid bending and lifting when possible, to avoid sitting, walking or standing for extended periods of time, to watch his weight, to sleep in a certain position that is good for the back, to alleviate his back pain as well as giving him a book of exercises designed for strengthening the back muscles. Because Mr. Shanks had been treated and subsequently was hospitalized and operated on within 90 days of the effective date of the health benefit plan he was not eligible for benefits. The district court's order dismissing with prejudice Mr. Shanks's claim with prejudice is therefore affirmed.

AFFIRMED.