LEVINE, J.
 

 The appellants, University Medical Clinics, Inc. and Dr. Samuel Sadow, appeal the trial court’s order granting temporary in-junctive relief to appellee Quality Health Plans, Inc. We affirm the trial court’s granting of the injunctive relief but remand for entry of an order with clear and definite factual findings to support the temporary injunction.
 

 Appellee Quality Health Plans, Inc. (“QHP”), is a Medicare HMO that contracted with appellant University Medical Clinic (“UMC”), a management service organization. Pursuant to the agreement, UMC would supply physician services as well as business and financial management services such as claims processing, credentialing, and medical management. Appellant Dr. Sadow signed the agreement as president of UMC. The provider agreement prohibited UMC for one year after expiration or termination of the agreement from directly or indirectly encouraging, soliciting, or influencing members of QHP’s health plan to disenroll from QHP or to enroll in a competing health plan. UMC was also prohibited from disclosing the names and personal information of QHP’s members and from using any of QHP’s information to further UMC’s own business interest. The same provider agreement required UMC to provide to QHP the “medical records of any Member within seven (7) business days of a request by” the health plan. The agreement further stated that at the termination of the agreement, UMC was to provide QHP all property and information in its possession belonging to QHP.
 

 QHP terminated the agreement with UMC. QHP notified its members that they would be assigned to new primary care physicians. QHP requested from UMC the members’ medical records, but UMC did not turn over the records. QHP
 
 *1193
 
 subsequently filed a complaint for temporary and permanent injunctive relief, alleging that appellants were advising QHP members to switch to another Medicare HMO because QHP was in financial distress and that appellants were giving incorrect information about staying with a doctor associated with UMC instead of transferring to a doctor affiliated with QHP. At the hearing for injunctive relief, QHP sought an injunction for solicitation and dissemination of the identities and information of QHP members as well as the production of the medical records of the members. The chief operating officer and chief compliance officer of QHP testified that appellants disseminated a letter to QHP members encouraging them to complain to the Center for Medicare and Medicaid Services (“CMS”) about QHP as well as other communications in which appellants encouraged members to enroll in other health plans. The testimony also acknowledged that correspondence to QHP members must first be submitted and approved by CMS, a step which the evidence indicates was not completed in this case.
 

 The chief operating officer testified to the cost and effort expended in the development of membership lists for the plan. She testified further that appellants’ correspondence and refusal to turn over medical records caused irreparable injury to QHP’s business and reputation. The chief operating officer testified to the continuing violations through the date of the injunction hearing. QHP presented testimony of the ongoing violations. A former patient of UMC, who was also a current member of QHP’s plan, testified to receiving a call from UMC regarding a nurse practitioner who had returned to UMC’s employ to encourage the patient to return to UMC as well. The chief operating officer testified to calls like that being made to encourage QHP members to leave and return to appellants. Finally, she testified that appellants promised to provide to QHP’s members out-of-network services free of charge, as an inducement to the members to leave QHP.
 
 [1]
 

 QHP also provided testimony from former employees of UMC. One testified to observing UMC’s office manager call QHP’s patients, telling them “we could still treat them ... that we would not charge them anything.” This former employee further testified that she heard Dr. Sadow and other individuals tell QHP’s plan members that they could change health plans or return to Medicare and that Dr. Sadow said that he would not charge for treatments. Another former employee of UMC stated that she overheard UMC’s office manager “trying to persuade the patients to switch insurance [from QHP] so that they could stay with UMC Clinics.”
 

 Dr. Sadow testified that after receiving notice of termination from QHP, he contacted QHP members by writing “to let them know of their rights per the CMS.” Dr. Sadow explained that the late delivery of the patients’ medical records was due to UMC’s lack of financial means to copy the records.
 

 The trial court granted injunctive relief based on the testimony elicited during the evidentiary hearing, and stated the following in its order:
 

 3. On or about March 30, 2009, QHP and UMC entered into a Comprehensive Provider Agreement (the “Agreement”), a copy of which is before this Court.
 

 4. The Agreement prohibits UMC, for a period of one (1) year after expiration
 
 *1194
 
 or termination of the Agreement, from directly or indirectly: (a) encouraging, soliciting, forcing or otherwise influencing the members of QHP’s health plan (“QHP’s Members”) to disenroll from QHP or enroll in any competing plan; (b) disclosing the names, addresses, or phone or identification numbers of any of QHP’s Members to any third party, except as required by process of law or regulation; or (c) using any of QHP’s materials, including, but not limited to, lists of QHP’s Members, directly or indirectly, to further the business purposes of UMC, its affiliates, consultants and employees, or any of UMC’s principals. 5. ... The Court finds that Sadow is a principal of UMC, is a party to the above-styled action, and had notice and an opportunity to be heard with respect to QHP’s requests for temporary injunc-tive relief.
 

 [[Image here]]
 

 11. The nonsolicitation, nondisclosure and non-interference provision of the Agreement are of the type enforceable under Florida Statutes § 542.335, and other applicable law.
 
 Henao v. Professional Shoe Repair, Inc.,
 
 929 So.2d 723 (Fla. 5th DCA 2006).
 

 [[Image here]]
 

 13. The Agreement further requires that UMC maintain medical and other records relating to the treatment by its physicians of QHP Members, and that during the term of the Agreement and after, UMC would make such records available to QHP and its Members without charge.
 

 [[Image here]]
 

 15.QHP, through the years it has been in business, has developed and maintained, at a substantial investment, an ongoing concern that has among its assets the relationships with the QHP Members, the lists of QHP’s Members, the participating provider network, contracts, QHP’s reputation, goodwill and other beneficial property.
 

 16. This Injunction is reasonably necessary to protect QHP’s legitimate business interests.
 

 17. The nonsolicitation, nondisclosure and non-interference provisions of the Agreement are reasonable in terms of time and scope.
 

 18. Based upon Florida law, and the evidence before the Court, QHP is entitled to a presumption, and has further provided evidence, that QHP will suffer irreparable harm and will have no adequate legal remedy if UMC or Sadow further violate the terms of the Agreement. [citations omitted]
 

 19. The public policy of both Florida and Federal law favors providing patients complete copies of medical records in a prompt and timely manner. In addition, the public policy of Florida favors providing reasonable protection to all legitimate business interests established by QHP, the avoidance of misleading or confusing elderly patients, and the preclusion of interference with QHP’s legitimate business efforts to comply with the complex federal regulations inherent to QHP’s operations as a Medicare Advantage health maintenance organization. Accordingly, the entry of this Order does not violate public policy.
 

 20. QHP has established a significant likelihood that QHP will prevail on the merits of QHP’s rights to injunctive relief.
 

 The trial court ruled that it would grant injunctive relief against both UMC and Dr. Sadow. Appellants were prohibited from “encourag[ing], soliciting], recruiting], forcing] or otherwise influencing] QHP’s members to disenroll from QHP, modify his or her contract with QHP, or enroll in any competing health plan.” The trial court also required appellants to provide to
 
 *1195
 
 QHP and its members “without charge, copies of all medical records of QHP members and other similar information.” As a result of this order, this appeal ensued.
 

 A trial court’s ruling on a motion for temporary injunction shall not be overturned unless there is a clear abuse of discretion.
 
 JonJuan Salon, Inc. v. Acosta,
 
 922 So.2d 1081, 1083 (Fla. 4th DCA 2006). Further, a party seeking a temporary injunction must establish that (1) irreparable harm will result if the temporary injunction is not entered; (2) an adequate remedy at law is unavailable; (3) there is- a substantial likelihood of success on the merits; and (4) entry of the temporary injunction will serve the public interest.
 
 Foreclosure FreeSearch, Inc. v. Sullivan,
 
 12 So.3d 771, 775 (Fla. 4th DCA 2009).
 

 Appellants argue that the trial court’s order was insufficiently factual, and was, in fact, conclusory. “Every injunction shall specify the reasons for entry. Fla. R. Civ. P. 1.610(c). Clear, definite, and unequivocally sufficient factual findings must support each of the four conclusions necessary to justify entry of a temporary injunction.”
 
 Richard v. Behavioral Healthcare Options, Inc.,
 
 647 So.2d 976, 978 (Fla. 2d DCA 1994);
 
 accord Yachting Promotions, Inc. v. Broward Yachts, Inc.,
 
 792 So.2d 660, 663 (Fla. 4th DCA 2001).
 

 The record of the evidentiary hearing indicates that there was an adequate showing justifying injunctive relief. There was evidence of appellants soliciting QHP members and the failure of UMC to provide medical records as required. Like
 
 Richard,
 
 “[although the record supports the trial court’s holding, the order is flawed.” 647 So.2d at 978. Therefore, we must remand the case to the trial court for the limited purpose of allowing the trial court to amend the injunction so that the order will contain specific factual findings to support the conclusions required to grant injunctive relief.
 

 As to the other issue raised on appeal, appellants claim that the trial court erred in applying the injunction to Dr. Sadow individually and improperly extended the term of the restriction beyond one year after the termination of the agreement. The trial court acted within its discretion in applying the injunction to Dr. Sadow individually, as Dr. Sadow was the president of UMC and personally involved in the violations of the agreement, which were ongoing as of the date of the injunction hearing.
 
 See
 
 Fla. R. Civ. P. 1.610(c);
 
 Bauer v. DILIB, Inc.,
 
 16 So.3d 318, 320-21 (Fla. 4th DCA 2009). Additionally, it is within a court’s discretion to run the injunction from the period of entry of the injunction rather than from termination of the agreement.
 
 See Capelouto v. Orkin Exterminating Co. of Fla.,
 
 183 So.2d 532 (Fla.1966);
 
 Mut. Benefits Corp. v. Goldenberg,
 
 709 So.2d 204 (Fla. 4th DCA 1998).
 

 In sum, we find there was sufficient evidence to affirm the trial court’s order for injunctive relief, but we remand for entry of an order delineating the required factual findings. We find the other issue involving the application of the injunction to Dr. Sadow to be without merit.
 

 Affirmed but remanded with instructions.
 

 WARNER and MAY, JJ., concur.
 

 [1]
 

 . The testimony outlined allegations, if proven, which could potentially violate CMS regulations, as well as various statutes, including prohibitions on inducements for the utilization of provider services, such as anti-kickback prohibitions.
 
 See
 
 42 U.S.C. §§ 1320a-7b(b)(1)-(2); § 456.054, Fla. Stat.