DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSIE MACHOVEC, CARL HOLME, KAREN HOLME, RACHEL EADE,**
and **ROBERT SPREITZER,**
Appellants,

v.

**PALM BEACH COUNTY,**
Appellee.

No. 4D20-1765

[January 27, 2021]

Appeal of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 50-2020-CA-006920-XXXX-MB.

Jared H. Beck, Elizabeth Lee Beck, and Victor Arca, of Beck & Lee Trial Lawyers, Miami; Louis Leo IV, Esq. of Florida Civil Rights Coalition, P.L.L.C., Coconut Creek; Joel Medgebow, Esq. of Medgebow Law, P.A., Coconut Creek; Melissa Martz, Esq. of Melissa Martz PLLC, Royal Palm Beach; and Cory C. Strolla, Esq. of The Law Office of Cory Strolla, P.A., West Palm Beach, for appellants.

Helene C. Hvizd and Rachel Fahey, Assistant County Attorneys, Palm Beach County Attorney's Office, West Palm Beach, for appellee.

Robert C. Swain, Deputy County Attorney, Gainesville, for Amicus Curiae Alachua County.

FORST, J.

Appellants Josie Machovec, Carl Holme, Karen Holme, Rachel Eade and Robert Spreitzer appeal the denial of their motion for an emergency temporary injunction to prevent enforcement of Palm Beach County Emergency Order No. 20-12 (June 24, 2020) ("EO-12"). This emergency order (a/k/a "mask mandate" or "mask ordinance") was initially effective on June 25, 2020 and has since been extended seven times, most recently on January 19, 2021, covering a period that ends on February 19, 2021. EO-12 mandates that "facial coverings" must be worn in Palm Beach

County at businesses and establishments, public places, county and municipal government facilities, and while using public transportation.

Appellants challenged EO-12 as an unconstitutional infringement on their right to privacy. The trial court upheld the mask ordinance, finding "the requirement to wear such a covering has a clear rational basis based on the protection of public health" and that the issuance of the emergency order was a "policy decision" based on "a reasonable and logical conclusion." In the instant appeal, Appellants argue that "[r]equiring the general population to use face coverings abridges the constitutional right to refuse medical treatment" and, accordingly, the trial court erred in analyzing Appellants' challenge to the ordinance by "rational basis review" rather than "strict scrutiny." They request remand for a new "strict scrutiny" review.

Finding that Appellants' argument on appeal is not supported by the record nor legal authority and that there is support for the trial court's determination that Appellants failed to establish a substantial likelihood of success on the merits or that an injunction will serve the public interest, we affirm.

## Background

On March 1, 2020, Florida Governor Ron DeSantis signed Executive Order 20-51, directing the Florida Department of Health to issue a "public health emergency." Fla. Exec. Order No. 20-51, § 1 (March 1, 2020). Numerous State and Palm Beach County emergency orders followed, responding to "a severe acute respiratory illness that can spread among humans through respiratory transmission." *See, e.g.*, City of West Palm Beach Exec. Order 20-02 (March 21, 2020).

In June 2020, the Palm Beach County Director of the Florida Department of Health stated at two meetings of the County's Board of County Commissioners that social distancing and the wearing of facial coverings were the best, pre-vaccine, methods to reduce the spread of the virus. EO-12. The Board voted to direct "the County Administrator to issue an additional order mandating the wearing of facial coverings in all businesses and establishments and in outdoor public spaces where social distancing is not possible." *Id.* Accordingly, EO-12 was signed by the Palm Beach County Administrator on June 24, 2020 and went into effect the following day. *Id.* The County's Board and Administrator are "authorized and empowered during a state of emergency . . . to make, amend, and rescind emergency orders deemed necessary to protect the health, safety,

2

and/or welfare of the people of Palm Beach County[.]" Palm Beach County, Fla., Code ch. 9, art. II, § 9-35 (2020).

EO-12 is titled "Additional Directive on Wearing of Facial Coverings." The directive has a broad scope and requires facial coverings to be "worn by all persons, other than those specifically exempted [elsewhere in the order] while obtaining any good or service or otherwise visiting or working in *any* business or establishment, including entering, exiting, and otherwise moving around within the establishment." EO-12, § 4a. (emphasis added). "Such businesses and establishments include, but are not limited to, restaurants, retail establishments, hotels, grocery stores, gyms, pharmacies, indoor recreational facilities, and vehicles for hire." *Id.* The order further mandates the wearing of facial coverings "by all persons in public places where social distancing in accordance with [Centers for Disease Control and Prevention ("CDC")] guidelines is not possible or not being practiced"; by "[a]ll persons utilizing the County's Palm Tran transit services"; and by "[a]ll persons accessing . . . any Palm Beach County or municipal-owned and operated buildings." EO-12, § 4b.–d.

Exemptions to the order's mandate are provided for children under two and any child in a licensed childcare facility, as well as "[p]ersons who have a medical condition that makes the wearing of a facial covering unsafe such as, but not limited to, asthma, COPD, other conditions that reduce breathing or lung capacity." EO-12, § 4e. Further notable exemptions are allowed for "[i]ndividuals while actively engaged in exercise and maintaining social distancing" and for "[p]ersons receiving goods or services from a business or establishment for the shortest practical period of time during which the receipt of such goods or services necessarily precludes the wearing of a facial covering such as, but not limited to, consuming food or beverage or receiving a facial grooming or treatment." *Id.*

In addition to the liberal exemption provisions, the order also gives a broad definition of "facial covering" as "any covering which snugly covers the nose and mouth, whether store bought or homemade, mask or clothing covering including but not limited to, a scarf, bandana, handkerchief, or other similar cloth covering and which is secured in place." EO-12, § 5. Furthermore, "persons may wear clear, plastic face shields, consisting of a piece of rigid, clear plastic attached to a headband that extends below the chin, whether store bought or homemade." *Id.*

Within days of issuance of EO-12, Appellants filed a Verified Emergency Motion for Temporary Injunction. Appellants are citizens of Palm Beach County. Their motion contends that EO-12 violates their right to privacy

(protected by Article I, Section 23 of the Florida Constitution). Appellants argued that the trial court should apply "strict scrutiny review" to EO-12 and that an injunction was appropriate because EO-12 does not further a compelling state interest using the least intrusive means. They further argued that EO-12 violated their right to due process (ensured by Article I, Section 9 of the Florida Constitution), contending that EO-12 is vague, arbitrary, and unreasonable, and not backed by any compelling state interest.

After a hearing on the motion and a review of Appellants' arguments and the County's response, the trial court issued a thirteen-page order, finding that a basis for a temporary injunction had not been established, as Appellants had not shown a substantial likelihood of success on the merits and had also failed to establish that the "public interest" is served by enjoining EO-12 the latter point, the order states:

> Plaintiffs' minimal inconvenience caused by the Mask Ordinance must be balanced against the general public's right to not be further infected with a deadly virus. It is beyond dispute that the potential injury to the public that would result from enjoining the government's ability to prevent the spread of a presently incurable, deadly, and highly communicable virus far outweighs any individual's right to simply do as they please.

In Appellants' appeal, their focus is solely on the contention that "[t]he trial court applied the wrong level of scrutiny, opting for rational-basis review when it should have applied strict scrutiny [because r]equiring the general population to use face coverings abridges the constitutional right to refuse medical treatment." As relief, Appellants request a "remand with instructions to decide the motion for temporary injunction under strict scrutiny."

## Analysis

A temporary injunction "is an extraordinary remedy which should be granted sparingly[.]" *Thompson v. Planning Comm'n of Jacksonville*, 464 So. 2d 1231, 1236 (Fla. 1st DCA 1985).

> To obtain a temporary injunction, the petitioner 'must establish that (1) irreparable harm will result if the temporary injunction is not entered; (2) an adequate remedy at law is unavailable; (3) there is a substantial likelihood of success on

4

the merits; and (4) entry of the temporary injunction will serve the public interest.'

*Donoho v. Allen-Rosner*, 254 So. 3d 472, 474 (Fla. 4th DCA 2018) (quoting *Univ. Med. Clinics, Inc. v. Quality Health Plans, Inc.*, 51 So. 3d 1191, 1195 (Fla. 4th DCA 2011)).  If a party fails to prove one of the requirements, the motion for injunction must be denied.  *State, Dep't of Health v. Bayfront HMA Med. Ctr., LLC*, 236 So. 3d 466, 472 (Fla. 1st DCA 2018).

"The standard of review of trial court orders on requests for temporary injunctions is [] hybrid.  To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review."  *Donoho*, 254 So. 3d at 474 (quoting *Fla. High Sch. Athletic Ass'n v. Rosenberg ex rel. Rosenberg*, 117 So. 3d 825, 826 (Fla. 4th DCA 2013)).

As noted above, Appellants argue that face coverings are "medical devices" and that the wearing of face coverings constitutes "medical treatment," because section 201(h) of the Federal Food, Drug & Cosmetic Act defines them as such "when they are intended for 'the cure, mitigation, treatment, or prevention of disease.'"[1]  Appellants next contend that both the United States and Florida Constitutions protect an individual's right to refuse medical treatment, relying upon the Due Process Clause of the Fourteenth Amendment and Article I, Section 23 of the Florida Constitution.  The latter states that "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."  Art. I, § 23, Fla. Const.

The principal judicial opinion cited by Appellants to support this "forced medical treatment" claim is *In re Guardianship of Browning*, 568 So. 2d 4 (Fla. 1992).  That opinion held that "[a] competent person has the constitutional right to choose or refuse medical treatment, and that right extends to all relevant decisions concerning one's health."  *Id.* at 11. *Browning* dealt with an incompetent patient's ability (through his surrogate) to terminate artificial life support measures.  568 So. 2d at 17. Another case cited in Appellants' initial brief, *R.C. v. Department of Children & Family Services*, 150 So. 3d 1277 (Fla. 3d DCA 2014), involved a judge's order compelling the mother in a termination of parental rights case to take a pregnancy test.  *Id.* at 1277.  In both *Browning* and *R.C.*, the plaintiff was contesting efforts to impose invasive procedures ordered

---

[1] Quoting FDA*, Enforcement Policy for Face Masks and Respirators During the Coronavirus Disease (COVID-19) Public Health Emergency* (Revised) 5 (May 2020), https://www.fda.gov/media/136449/download.

by a hospital and a judge, respectively. In contrast to the instant case, "[t]here was no pretense of following any legislative directives or intentions" in either of those cases. *R.C.*, 150 So. 3d at 1280.

The other two opinions referenced in the initial brief are *Franceschi v. American Motorists Insurance Co.*, 852 F.2d 1217 (9th Cir. 1988), and *Shanks v. Blue Cross & Blue Shield United of Wisconsin*, 979 F.2d 1232 (7th Cir. 1992). In both cases, the focus was on the definition of "medical treatment" in a specific insurance policy, with the plaintiffs seeking coverage for diagnostic procedures (colonoscopy and biopsies) and a visit to a back specialist, respectively. *Franceschi*, 852 F.2d at 1219–20; *Shanks*, 979 F.2d at 1233. Moreover, in both cases, the plaintiff was seeking the treatment. Thus, neither case has any applicability to the instant case. Nor do the definitions of "medical treatment" in these cases support Appellants' argument. In *Franceschi*, that term was defined as "[t]he management of illness, by the use of drugs, dieting, or other means designed to bring relief or effectuate a cure." 852 F.2d at 1220 (emphasis removed). In *Shanks*, "treatment" was defined as "to care for or deal with medically or surgically." 979 F.2d at 1233 (quoting *Shanks v. Blue Cross & Blue Shield United of Wisc.*, 777 F. Supp. 1444, 1449 (E.D. Wis. 1991)).

Appellants' argument that the individuals required to wear facial coverings are being subjected to forced "medical treatment" distorts the nature of the County's mask ordinance. The coronavirus that causes COVID-19 "spreads through respiratory droplets or small particles, such as those in aerosols, produced when an infected person coughs, sneezes, sings, talks, or breathes."[2] The CDC now notes that "[m]asks offer some protection to [the wearer of the mask]" but that the primary focus on recommending the wearing of masks has been because "[m]asks provide an extra layer to help prevent the respiratory droplets from traveling in the air and *onto other people*."[3] "Masks are *primarily* intended to reduce the emission of virus-laden (*'source control'*), which is especially relevant for asymptomatic or presymptomatic infected wearers who feel well and may be unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions."[4]

---

[2] *Frequently Asked Questions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Spread (Dec. 17, 2020 12:00 AM) (emphasis removed).

[3] *Frequently Asked Questions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Prevention (Dec. 17, 2020 12:00 AM) (emphasis added).

[4] *Scientific Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, Ctrs. for Disease Control & Prevention,

Thus, requiring facial coverings to be worn in public is not primarily directed at treating a medical condition of the person wearing the mask/shield. Instead, requiring individuals to cover their nose and mouth while out in public is intended to prevent the transmission from the wearer of the facial covering to others (with a secondary benefit being protection of the mask wearer). Requiring facial coverings in public settings is akin to the State's prohibiting individuals from smoking in enclosed indoor workplaces. While imposing limitations on the places where one can smoke may benefit the smoker by curtailing opportunities to engage in a practice linked to many detrimental health issues impacting the smoker, the express purpose of the Florida Clean Indoor Air Act "is to protect [other] people from the health hazards of secondhand tobacco smoke and vapor and to implement the Florida health initiative in s. 20, Art. X of the State Constitution." § 386.202, Fla. Stat. (2020).

As succinctly stated in the trial court's order, "the covering of one's nose and mouth is designed to safeguard other citizens."[5] As EO-12 does not implicate the constitutional right to choose or refuse medical treatment, the trial court correctly applied the rational basis standard of review to Appellants' challenge to the ordinance.

Under the rational basis standard, legislation is presumptively constitutional, and the burden is on the challenging party to prove that the legislation does not bear a reasonable relationship to the furtherance of a valid governmental objective. *Lane v. Chiles*, 698 So. 2d 260, 262 (Fla. 1997). On appeal, Appellants do not present any arguments to support a claim that the County lacked a rational basis for the promulgation of EO-12. "It is within the police power of the State to enact laws to prevent the spread of infectious or contagious diseases." *State Dep't. of Agric. &*

---

https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html?fbclid=IwAR28PppCa6x2uxwO8Z2baHM0KHS4JXx0inzzMQs3zRHV1qql_0a8mxZfpCw (last updated Nov. 20, 2020) (emphases added).

[5] Even if we accepted Appellants' argument that the order to wear facial coverings was directed to safeguarding the mask wearer, that would make the emergency order similar to Florida's now discarded mandatory motorcycle helmet law, section 316.211, Florida Statutes. Notwithstanding constitutional challenges based on the right to privacy, the helmet laws were uniformly upheld. *See Picou v. Gillum*, 874 F.2d 1519, 1520 (11th Cir. 1989); *Hamm v. State*, 387 So. 2d 946, 947 (Fla. 1980); *Cesin v. State*, 288 So. 2d 473, 474–75 (Fla. 1974); *State v. Eitel*, 227 So. 2d 489, 490–91 (Fla. 1969). There is no indication that any of the litigants or the courts in these cases understood the mandatory motorcycle helmet laws as imposing "medical treatment" on the motorcycle operators and riders.

7

*Consumer Servs. Div. of Animal Indus. v. Denmark*, 366 So. 2d 469, 470 (Fla. 4th DCA 1979). Just as "the legislature may constitutionally conclude that the cyclist's right to be let alone is no more precious than the corresponding right of ambulance drivers, nurses and neurosurgeons," *State v. Eitel*, 227 So. 2d 489, 491 (Fla. 1969) (upholding the constitutionality of Florida's now discarded mandatory motorcycle helmet law), the Board of County Commissioners had the legislative authority to require facial coverings to be worn in public settings (with exemptions) in response to a virus deemed responsible for over 400,000 deaths in the United States (as of January 20, 2021).[6] Whether the Board used this authority wisely (in light of the broad definition of "facial coverings" and the expansive list of exemptions) is not at issue in this appeal.

Accordingly, we agree with the trial court that Appellants have failed to establish that "there is a substantial likelihood of success on the merits" of their argument that the County's mask ordinance abridges a constitutional right to refuse medical treatment.

Appellants have not directly addressed the fourth prong for obtaining a temporary injunction, the applicant's burden to establish that "entry of the temporary injunction will serve the public interest." *Donoho*, 254 So. 3d at 474. There are a number of individuals and groups who maintain that the attention paid to the coronavirus pandemic is overdone, with some even using the term "hoax."[7] However, to quote a 1960s song, "[t]here's something happening here . . . ."[8] Unlike that song, where "what it is ain't exactly clear," it is readily apparent that, since March 2020, Palm Beach County (as well as most of the rest of world) has been facing what the World Health Organization deemed a "Public Health Emergency of International Concern," necessitating "mitigation measures." *See* Fla. Exec. Order No. 20-52 (March 9, 2020). Thus, we cannot say that Appellants have established that enjoining the County's attempt to mitigate the spread of the virus by requiring the wearing of facial coverings (with ample exemptions) "will serve the public interest."

---

[6] *CDC COVID Data Tracker*, Ctrs. for Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/ (last updated January 20, 2021 1:16 PM).

[7] *See, e.g.*, Beatrice Dupuy, *Reno Doctor's Selfie Used to Claim COVID-19 Is a Hoax*, U.S. NEWS, https://www.usnews.com/news/health-news/articles/2020-12-01/reno-doctors-selfie-used-to-claim-covid-19-is-a-hoax (Dec. 1, 2020, 7:22 PM).

[8] BUFFALO SPRINGFIELD, *For What It's Worth*, on BUFFALO SPRINGFIELD (Atco Records, 1967).

## Conclusion

A person's "right to be let alone and free from governmental intrusion into the person's private life," guaranteed by Article I, Section 23 of the Florida Constitution, is an important right, but it is not absolute. "Although a person's subjective expectation of privacy is one consideration in deciding whether a constitutional right attaches, the final determination of an expectation's legitimacy takes a more global view, placing the individual in the context of a society and the values that the society seeks to foster." *Jackson v. State*, 833 So. 2d 243, 245 (Fla. 4th DCA 2002). To that end, "there are circumstances in which a public emergency, for instance . . . the spread of infectious or contagious diseases or other potential public calamity, presents an exigent circumstance before which all private rights must immediately give way under the government's police power." *Davis v. City of S. Bay*, 433 So. 2d 1364, 1366 (Fla. 4th DCA 1983).[9]

Appellants' sole argument on appeal fails because they did not establish that the County's emergency order mandating the wearing of face coverings intrudes on their constitutional right to refuse medical treatment. The mask mandate is directed to protecting the health, vis-à-vis the coronavirus, of people in the proximity of the mask wearer, with facial coverings providing a "mitigating measure" to help prevent the respiratory droplets coming from the mask wearer's mouth or nose from traveling in the air and "onto other people." With no viable constitutional claim having been raised by Appellants' arguments, we conclude that the trial court properly subjected Appellants' claim to rational basis review in determining that EO-12's facial covering mandate "has a clear rational basis based on the protection of public health." Consequently, the trial court's order denying Appellants' Verified Emergency Motion for Temporary Injunction is affirmed.

*Affirmed.*

WARNER and KLINGENSMITH, JJ., concur.

---

[9] *See also* Zechariah Chafee, Jr., *Freedom of Speech in War Time*, 32 Harv. L. Rev. 932, 957 (1919) ("Your right to swing your arms ends just where the other man's nose begins."); John Stuart Mill, *On Liberty,* 43 Great Books of the Western World 271 (Robert Maynard Hutchins ed., 1952) ("[T]he only purpose for which power can rightfully be exercised over any member of a civilised community, against his will, is to prevent harm to others.").

*          *          *

*Not final until disposition of timely filed motion for rehearing.*